## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## SOUTHERN DIVISION

| | |
|---|---|
| SPECIAL NEEDS TRUST FOR K.C.S., *et al.* | |
| Plaintiffs, | |
| v. | Action No. 08:10–CV–1077—AW |
| JOHN G. FOLKEMER, *et al.* | |
| Defendants. | |

## MEMORANDUM OPINION

Pending before the Court is the Special Needs Trust for KCS, Pamela Proctor, and Louis Michaux Gonzales' (collectively "Plaintiffs") Motion for Summary Judgment (Doc. No. 17). John G. Folkemer and the Maryland Department of Health and Mental Hygiene (collectively "Defendants") have filed a Cross Motion for Summary Judgment (Doc. No. 23). Plaintiffs have also filed a Motion for Leave to File a Surreply. (Doc. No. 28). The parties have fully briefed the issues, and the Court will address these motions herein. For the reasons articulated more fully below, Plaintiffs' Motion for Summary Judgment is **DENIED**, and Defendants' Cross Motion for Summary Judgment is **GRANTED**. Plaintiff's Motion for a Surreply is **DENIED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises from the Maryland Department of Health and Mental Hygiene's ("the Department") interest in seeking reimbursement from Plaintiffs for funds that they expended during Plaintiffs' enrollment in Maryland's medical assistance program. Plaintiffs oppose the Department's intentions to seek reimbursement on various grounds which will be addressed herein.

### a. KCS' Birth Injuries and Associated Litigation

The instant case was removed from the Circuit Court of Prince George's County, Maryland on April 28, 2010. (Doc. No.1). KCS, a minor plaintiff, endured a challenging delivery when she was born on November 20, 2004. As a result of her difficult delivery, KCS was diagnosed with hypoxic ischemic brain injury, microcephaly, cystic encephalomalacia, spasticity, global delay and epilepsy, and spastic quadriplegia. KCS' birth injuries have left her permanently disabled, thus requiring her to have 24-hour medical care. Having been found to be eligible for medical assistance benefits, the Department began paying for KCS' medical expenses at birth and continues to pay those expenses. [1]

The Maryland Department of Health and Mental Hygiene is a state agency that runs Maryland's Medical Assistance Program. This agency is tasked with complying with federal and state statutes and regulations applicable to its operations. Defendant John G. Folkemer is the Deputy Secretary for Health Care Financing for the Department of Health and Mental Hygiene. One of the divisions that Folkemer is responsible for supervising is the Department of Medical Assistance Recoveries.

As a result of KCS's difficult birth, her mother and next friend sought W. Scott Sonntag ("Mr. Sonntag") as counsel to investigate and prosecute a medical negligence claim against the health care providers who were in charge of KCS' delivery. Mr. Sonntag filed suit on behalf of KCS in the Circuit Court for Prince George's County on December 17, 2007, alleging negligence against the healthcare providers who were involved in KCS' delivery. The parties reached a settlement in this claim in August 2009, settling the case for $3,000,000.00.[2] The attorney's

---

[1] As a result of her enrollment in this state run program, which is in part governed by federal Medicaid laws, in this Opinion, KCS is also referred to as "Medicaid recipient."

[2] Plaintiffs aver that although they received a settlement in the amount of $3,000,000, KCS' actual damages were far more, totaling $24,285,720.00. Plaintiffs offer the following breakdown of the actual damage amounts they incurred:

| | |
|---|---|
| Medicaid Payments | $294,000.00 |
| Net Income Loss | $1,547,846.00 |
| Future Medical Expenses | $21,793,874.00 |

fees for the claim were $1,000,000.  The litigation expenses for prosecuting the claim totaled $53,245.07.

On September 8, 2009, a trust named the Special Needs Trust ("the Trust") was created for KCS.  The purpose of the trust was to receive the proceeds of the settlement, hold those proceeds for KCS' benefit, and to preserve her eligibility to receive certain government provided benefits.   On July 30, 2009, the Circuit Court for Prince George's County entered an order directing that the proceeds from the settlement, less the attorney's fees, be placed into this trust.

Defendants claim that Mr. Sonntag notified the Department that settlement negotiations were occurring, "but did not provide the Department prior notice of the settlement of the case." (Doc. No. 24, at 12).   According to Defendants, when Mr. Sonntag received KCS' settlement proceeds, he failed to hold the funds for the benefit of the Department and transferred them to the Special Needs Trust instead.  *Id.*   Defendants did not intervene in KSC's suit against her health care providers and aver that they did not learn that proceeds from her settlement had been transferred  until months after the transfer had occurred.  *Id.*

The Department has alleged that they are entitled to §298,585.75 as reimbursement for the medical assistance benefits that they paid on behalf of KCS, and Plaintiffs do not contest that this is the amount that the Department expended for KCS' medical care.  The Department seeks to recover this amount from the settlement award that KCS obtained from her third-party tortfeasors.  In the matter at bar, Plaintiffs challenge the Department's claim for reimbursement on the grounds that the Department's claim for reimbursement violates federal Medicaid provisions.   To date, Plaintiffs have declined to pay to the requested reimbursement amount to the Department.

---

Pain and Suffering (Capped Amount)    <u>$650,00.00</u>
$24,285,720.00

Both parties in this matter have filed motions for summary judgment.[3]   As to Count I, Plaintiffs have requested that the Court grant declaratory relief, finding that §§15-109 (d) and 15-120 of the Health General Article, Maryland Annotated Code, violate the federal Medicaid statute, codified at 42 U.S.C.§1396p(a) and (b).   Plaintiffs posit that Maryland's statutes are preempted to the extent they authorize the Department to proceed with a claim against KCS' tort recovery for reimbursement of medical assistance benefits correctly paid on her behalf.     In Count II, Plaintiffs request that the Court determine the amount of their tort recovery to which the Defendant is entitled.[4] With respect to Count III, Plaintiffs seek declaratory and injunctive relief, requesting that the Court declare that §15-109(d) and §15-120(a) of the Maryland General Health Article, Maryland Annotated Code provide only for the Department's acquisition of an interest to recover for past medical expenses paid by the Department, and hence, do not allow the Department to seek reimbursement from the Medicaid recipient's recovery which is intended to compensate for future medical expenses.    In Count IV, Plaintiffs request that this Court find and declare that §15-120(c) of the Health General Article, Maryland Annotated Code limits the amount required to be held for the benefit of the Department to the amount of the Department's subrogation interest less a deduction for attorney's fees and litigation costs.    Additionally, Plaintiffs seek injunctive relief, requesting that the Court enjoin the Department from asserting a claim for reimbursement of medical assistance benefits against KCS' tort recovery.  Finally, Plaintiffs request that the Court declare that the Department's assertion of a claim against KCS' recovery violates her rights under 42 U.S.C. §1983.

---

[3] In Defendants' cross motion for summary judgment, they do not present new counts, but request judgment in their favor on each of the counts that Plaintiffs have alleged.
[4] Plaintiffs inform the Court that a determination of Count II will be unnecessary if the Court decides that the purely legal issues presented in Counts III and IV do not warrant a grant of summary judgment in the Plaintiffs' favor.

### b. Applicable Federal Medicaid Provisions[5]

In 1965, Congress enacted Title XIX of the Social Security Act, 42 U.S.C. §1396, *et seq.*, creating the Medicaid program which uses state and federal funding to offer medical care for those who cannot afford to pay for such care. (Doc. No. 4, at 6).  As a condition of receiving federal funding for this program, participating states are required to comply with federal regulations for determining who is eligible to participate in the Medicaid program, administering the Medicaid program in their state, and submitting state plans for federal approval, *inter alia. Id.* The federal government funds between 53 and 83 percent of the costs of patient care for states that comply with the federal Medicaid regulations.  *Id.*  Section §1396, et seq. allows participating states to seek reimbursement for the funds that it has expended on behalf of Medicaid recipients, subject to certain conditions.  *Id.*  Pursuant to the anti-lien and anti-recovery provisions of §1396, when seeking reimbursement, states may not attach a lien to a Medicaid recipient's settlement award if the lien is for an amount that exceeds the cost of medical care that the state has already paid for the recipient.[6]

The Maryland Department of Health and Mental Hygiene ("the Department") is responsible for administering the Medicaid program in the state of Maryland.   The Department acts pursuant to HG §§15-109 and 15-120 when administering the Maryland medical assistance program.   Relevant to this case, these statutory provisions include proscriptions on how the state can seek reimbursement and the amounts which the state is allowed to recoup when a Medicaid recipient receives a settlement from the third party tortfeasor who caused the recipient's injuries.   Defendants claim that the Maryland statutory scheme mandates that

---

[5] Defendants offer a concise history of the 42 U.S.C. §1396 in their Cross Motion for Summary Judgment, which the Court cites here.

[6] The text of this provision is cited in section II(a) of this Opinion.  The provision, known as the "anti-lien" provision has been interpreted by the Supreme Court in *Department of Health and Human Services v. Ahlborn*, 547 U.S. 268 (2006).  The Court will evaluate this provision more extensively herein.

Medicaid recipients assign their rights to the state as a condition of receiving assistance from the state of Maryland.  *Id.* at 7.  Moreover, the Maryland statute provides that in the event that a Medicaid recipient receives a damage award from the third party tortfeasor that caused the recipient's injuries, the state is granted with subrogation rights to any cause of action that the program recipient has against the third party.  *Id.*  at 8.  The Maryland recovery statutes possess a "notice and hold" provision, which require that "a recipient or his representative who receives money in a settlement in which the Department has a subrogation claim, 'shall after receiving written notice of the subrogation claim, hold that money, for the benefit of the Department to the extent required for the subrogation claim, after deducting applicable attorney's fees and interest.'" (Doc. No. 24, at 6; HG §15-120(c)(1)).

## I.        STANDARD OF REVIEW

Summary judgment is only appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). The Court must draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence.  *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  To defeat a motion for summary judgment, the nonmoving party must provide evidence that shows a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  While the evidence of the nonmoving party is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp. Inc.*, 152 F.3d 326, 330-31 (4th Cir. 1998). Additionally, hearsay statements or conclusory statements with no evidentiary

basis cannot support or defeat a motion for summary judgment. *See Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).

Where the parties have made cross-motions for summary judgment, the Court must consider each motion on its own merits. The Court will consider each party's evidentiary showing, regardless of which motion the evidence was tendered under. *Costelo v. Chertoff* , No. SA08-00688-JVS(SHx), 2009 WL 4030516, at *1 (C.D. Cal. Nov. 10, 2009) (internal citations omitted).

## II.      ANALYSIS

### 1.   Motion for Leave to File Surreply

Plaintiffs have moved for leave to file a surrepply to Defendant's Reply brief (Doc. 28, at 1), pursuant to Local Rule 105.2, which requires that a party seek leave of the Court in order to file a surrepply memorandum.  Surreply memoranda "may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." *Khoury v. Meserve*, 268 F.Supp. 2d 600, 605 (D.Md. 2003).   In their motion, Plaintiffs contend that Defendants introduce new arguments to which the Plaintiffs should have an opportunity to respond.  Plaintiffs also maintain that even if the arguments presented in the reply are not entirely new, they should have the opportunity to submit a surreply "if the reply provides additional specific arguments that were earlier made by the party in a more general manner."  (Doc. No. 28).  Defendants oppose this Motion on the grounds that "plaintiffs fail to identify which new arguments or facts defendants have introduced that necessitate the filing of a surreply; and defendants' reply merely responds to arguments plaintiffs made in their opposition reply**."** (Doc. No. 29).   In their motion, Plaintiffs have not identified which arguments that Defendants have presented which are new, nor has the Court's review of the briefs revealed that

Defendants have made any new arguments in their reply. Moreover, the Plaintiffs have not identified any arguments that were made in a general manner previously that were addressed more specifically in Defendants' reply. As such, a surreply is not warranted in this matter, and Plaintiffs' motion is **DENIED**.

### 2. Count I-Alleged violation of 42 U.S.C. §1396p

In Count I, Plaintiffs request that the Court grant declaratory relief, finding that §§15-109 (d) and 15-120 of the Health General Article, Maryland Annotated Code, violate the federal Medicaid statute, codified at 42 U.S.C.§1396p(a) and (b). Plaintiffs posit that Maryland's statutes are preempted to the extent they authorize the Department to proceed with a claim against KCS' tort recovery for reimbursement of medical assistance benefits correctly paid on her behalf.

At issue in this suit is the Department's attempt to obtain reimbursement for funds they expended on the medical care of KCS. Plaintiffs believe that the Department is unlawfully seeking funds from KCS, as opposed to seeking funds from the rightful third party who was responsible for the medical injuries she sustained, thus violating 42 U.S.C. §1396p. Citing §1396, *et seq.* Plaintiffs argue that the Department is in violation of federal law, which requires that states seek recovery from responsible third parties for reimbursement of Medicaid payments, instead of seeking reimbursement from the Medicaid recipient himself. Thus, according to Plaintiffs, the parties responsible for causing KCS' birth injuries are the parties from whom the Department should be seeking reimbursement. ("While federal law requires that states seek reimbursement for Medicaid expenditures, federal law also plainly contemplates that states will do so via pursuit of direct actions against responsible third parties.") (Doc. No. 17-1, at 14). Plaintiffs request that the Court find Maryland law to the contrary is in direct conflict with

federal law and consequently that the federal law prohibiting reimbursement preempts state law. Defendants argue that the settlement proceeds for medical expenses were never the property of the Medicaid recipient because the recipient assigned the rights to these proceeds to the state of Maryland, and hence, the Maryland recovery scheme does not conflict or violate §42 U.S.C. §1396.

### a. Lien on Plaintiff's Property

To assess whether the Department has violated the anti-lien or anti-recovery provisions of §1396 by seeking reimbursement from KCS, as opposed to the third party tortfeasor, the Court must first determine whether a lien actually existed on the Plaintiffs' property.   According to Plaintiffs, the federal Medicaid statute requires that states seek reimbursement directly from responsible third parties, not from the Medicaid recipient himself. (Doc.No. 17-1, at 13) ("§1396a(a)(25)(A), requires that states participating in Medicaid 'will take all reasonable measures to ascertain the legal liability of ***third parties***' and 'will [collect] sufficient information to enable the State to pursue claims against such third parties.'").

Defendants respond to Plaintiffs' assertion that the anti-lien provisions of 1396, *et seq.* should bar the Defendants from seeking reimbursement directly from KCS, by asserting three principle arguments.   First, Defendants declare that the language of §1396(a)(25)(B) mandates that a state can only seek reimbursement from a third party after liability is established ("[A] State is required to take action only when tort liability 'was found to exist' or 'established later' by means of a court judgment or settlement obtained by a recipient.") (Doc. No. 24, at 12). Hence, Defendants state that they are entitled to seek reimbursement of Medicaid funds from a responsible third party or indirectly from a recipient who has assigned the rights to their tort recoveries to the state only *after* liability from the third party has been found.  *Id.* at 12.

Defendants insists that liability must be found as a precondition for the state to assert its rights under its assignment under §1396(a)(25)(B), arguing that "Congress did not intend to require direct action by States against tortfeasors merely on the basis of being notified of a pending tort action by a recipient." *Id.* at 14.

The Court does not agree that states are only required to assert their rights in a suit *after* the responsible third parties are found liable. Defendants solely point the Court to a passing reference in the Senate Report on §1396, et seq. to support their argument that a state must only seek reimbursement *after* liability is established.[7] It appears to the Court that the Senate report merely makes a cursory reference to the time when states are supposed to seek reimbursement from a third party. However, the Senate does not elaborate on a time by which states are required to seek reimbursement, and therefore, it is unlikely that the use of the phrase "established later" signifies anything more than the Senate's acknowledgement that it would be impractical for a state to seek reimbursement from a Medicare recipient before they received their settlement. Therefore, the use of the word "later" seems to imply the inherent impracticality of requiring a state to obtain reimbursement before settlement moneys are obtained from responsible third parties. Thus, at this juncture, the Court is unwilling to accept the Defendants' proposition that states are "only required to take action when tort liability [is] 'found to exist' or 'established later' by means of a court judgment or settlement obtained by a recipient." (Doc. No. 24, at 12). The Court believes that *some action* may be required by the state to claim its rights to the potential settlement award before liability is established. However, the Court believes that Maryland took this action by placing Plaintiff on notice that the state was entitled to a portion of the settlement proceeds that KCS received.

---

[7] Defendants cite United States Senate Report No. 744, for the statement "[I]f medical assistance is granted and legal liability of a third party is *established later,* the State or local agency must seek reimbursement from such party." (Doc. No. 24, at 14).

Second, Defendants argue that §1396 does not limit states to seeking reimbursement directly from the responsible third parties. Defendants posit that by virtue of the assignment of rights that Medicaid recipients give to the state when they enroll in the medical assistance program, the settlement proceeds that Medicaid recipients receive from third parties do not belong to the recipient, but instead, they belong to the state. (Doc. No. 24, at 16). Defendants reason that because KCS assigned her rights to reimbursement for medical expenses to the state of Maryland, the proceeds from her settlement do not belong to her. They belong to the state of Maryland. Therefore, Defendants assert, they are not seeking reimbursement proceeds directly from the Medicaid recipient because these proceeds are not her property. The Court agrees with Defendants' argument that settlement proceeds from Medicaid recipients are the property of the state of Maryland, to the extent that these proceeds are *exclusively* for medical care. However, to the extent that the settlement award is meant to compensate the Medicaid recipient beyond medical care, and to the extent that Defendants seek to obtain more than the amount of the payment for medical care, the Court does not believe that the remaining portion of the settlement is the state's property. The Supreme Court's decision in *Ahlborn* guides this Court's analysis. The Court articulates its reason for this conclusion in the proceeding discussion.

Defendants direct the Court to *State v. Peters*, 946 A.2d 123, 1240 (Conn. 2008) for its rejection of the argument that federal Medicaid statutes requires states to pursue third parties directly for reimbursement. The Court accepts the fact that when a Medicaid recipient enters into the medical assistance program provided by the state of Maryland, the recipient automatically assigns their rights to reimbursement from third parties for medical expense to the state. The plain language of HG, §15-109(d) compels this conclusion. ("As a condition of eligibility for medical assistance, a recipient is deemed to have assigned to the Secretary of

Health and Mental Hygiene or the Secretary's designee any rights to payment for medical care services from any third party who has the legal liability to make payments for those services, to the extent of any payments made by the Department on behalf of the recipient.")

 As the settlement proceeds that KCS received from the state of Maryland represented a global award (including unstipulated damages for medical care, lost wages, pain and suffering, etc.), the Court is required to extend its inquiry of whether Maryland's statute violates the anti-lien and anti-recovery provisions of §1396 by seeking reimbursement of this global sum directly from the Medicaid recipient, since the total award amount included damage categories for expenses that the Department did not cover.[8]

Plaintiffs urge the Court to find that §1396 expressly prohibits a state from obtaining reimbursement from Medicaid recipients directly, and instead, requires the state to seek this payment directly from the responsible third party. However, the case law that Plaintiffs present to support their proposition does not, in the Court's view, support such a broad conclusion.

In *Arkansas Dep't of Health and Human Services v. Ahlborn*, 547 U.S. 268 (2006), the Supreme Court directly addressed the issue of what portion of a Medicaid recipient's settlement award was subject to the confines of the anti-lien provisions of §1396. In *Ahlborn*, the state of Arkansas imposed a lien on the settlement proceeds that a state's Medicaid recipient had received from the third party responsible for causing her injuries. *Id.* In assessing the anti-lien provision of §1396, the *Ahlborn* Court was tasked with determining whether the Arkansas Department of Health and Human Services was entitled to "lay claim to more than the portion of Ahlborn's [Medicaid recipient] settlement that represents medical expenses." *Id.* at 280. Arkansas alleged, as Defendants in the case at bar have claimed, that the property on which a

---

[8] In their discussion on Count II of the Complaint, Plaintiffs notes that its damage claims included amounts for pain and suffering, net income loss, Medicaid payments, and future medical expenses. (Doc. No. 17-1, at 6).

lien had been placed, was not the property of the Medicaid recipient, but was instead the property of the state, by essence of the automatic assignment provision of the state statute. *Id.* at 270. Arkansas argued that "the automatic assignment effected by the Arkansas statute rendered the proceeds the property of the State." *Id.* at 285.   Therefore, according to the state, they had not violated the federal anti-lien statute because they had not attached a lien to the Medicaid recipient's *property*.   The seminal holding in *Ahlborn* distinguished property that belonged to the state and property that belonged to the Medicaid recipient as a result of the forced assignment of rights. *Id.* The Court held that to the extent that the forced assignment only assigned the state the right to reimbursement for medical care from a Medicaid recipient's settlement, the state did not violate the anti-recovery provision of §§1396a(a)(25) and 1396k(a). *Id.* However, the Court noted that forcing an assignment on any other portion of the Medicaid recipient's settlement violated the anti-lien provision. *Id.* ("There is no question that the State can require an assignment of the right, or chose in action to receive payments  for medical care  . . . . But that does not mean that the State can force an assignment of, or place a lien on, any other portion of Ahlborn's property.") *Id.* Therefore, the Court rejected Arkansas' argument that the automatic assignment provision automatically made Ahlborn's settlement the property of the state.

The Court rejected this argument on the following grounds:

> First, ADHS insists that Ahlborn at all times until judgment retained her entire chose in action-a right that included her claim for medical damages. The statutory lien, then, cannot have attached until the proceeds materialized. That much is clear from the text of the Arkansas statute, which says that the "assignment shall be considered a statutory lien on any settlement ... *received by the recipient from a third party.*" Ark.Code Ann. § 20-77-307(c) (2001) (emphasis added). The settlement is not "received" until the chose in action has been reduced to proceeds in Ahlborn's possession. Accordingly, the assertion that any of the proceeds belonged to the State all along lacks merit.

*Id.* at  285.[9]

───────────────
[9]  The Court in *Tristani* further illuminated the reason why notwithstanding the automatic assignment provisions of the state statute, the settlement proceeds that a Medicaid recipient received from responsible third parties were not the property of the state, but were the property of the recipient.  Citing the Minnesota Supreme Court in *Martin v. City of Rochester*, 642 N.W.2d 1, 14-15 (Minn. 2002), the Court noted,

Plaintiffs highlight that like in *Ahlborn*, the Defendants in this matter are directly seeking their property, in violation of the anti-lien provision. Defendants respond to this argument by asserting, "[t]he basis for the Court's holding in *Ahlborn* was that the Arkansas statute did not impose the lien until the settlement was 'received by a recipient from a third party.' By contrast, under Maryland law, 'no lien existed.'" (Doc. No. 24, at 17) (quoting *Roberts*, 249 Md. At 515). However, the Court in *Ahlborn* did not rely on semantics to evaluate whether the Arkansas statute violated the anti-recovery provision of the §1396. Just as the Arkansas attempted to assert that their lien was classified as an assignment, and thus did not violate the federal anti-lien statute, Defendants aver that Maryland's recovery statute is a notice and hold statute, and thus, no lien is imposed on the settlement award that the state seeks from the Medicaid recipient. However, this argument was not persuasive in *Ahlborn*, considering the nature of the assignment in that case.[10]

---

It is critical to note that the federal scheme reflects the concept that the assigned right to recover for medical expenses is no longer the property of the medical assistance recipient and therefore the anti-lien provision does not prohibit a state from pursuing recovery under this assigned right. Essentially, at the time of the accident, the injured party acquires in tort one or more rights of action or claims against those responsible for the injuries. These rights of actions or claims can be likened to a "bundle of sticks." See *United States v. Ben-Hur*, 20 F.3d 313, 317-18 (7th Cir.1994) (stating that property rights are likened to "bundle of sticks," each stick separately alienable); *In re Nelson*, 92 B.R. 837, 842 (Bankr.D.Minn.1988) (reflecting the implicit concept that property rights are divisible). As a condition of receiving medical assistance from a state, a medical assistance recipient assigns to the state one stick from that bundle-the specific claim to recover medical expenses from those responsible for the injuries. At this point, the state becomes the sole owner of the claim against any third parties for medical expenses. But the recipient retains ownership of the remaining sticks in the bundle-that is to say, the claims for pain and suffering, emotional distress, disability, disfigurement, loss of earnings, and loss of earning capacity. To the extent that any settlement with the responsible third parties is for this larger bundle of sticks (the original tort action minus the claim for medical care), the settlement proceeds are the recipient's property, and as such are protected by the federal anti-lien provision. *Tristani*, 609 F.Supp.2d at 471.

[10] The *Ahlborn* Court declined to assume that the Arkansas' statutory regime was compliant with the federal anti-lien provisions solely because the Arkansas statute termed their recovery mechanism as an "assignment" and not a "lien."

That the lien is also called an "assignment" does not alter the analysis. The terms that Arkansas employs to describe the mechanism by which it lays claim to the settlement proceeds do not, by themselves, tell us whether the statute violates the anti-lien provision. See *United States v. Craft*, 535 U.S. 274, 279, 122 S.Ct. 1414, 152 L.Ed.2d 437 (2002); *Drye v. United States*, 528 U.S. 49, 58-61, 120 S.Ct. 447, 145 L.Ed.2d 466 (1999). Although denominated an "assignment," the effect of the statute here was not to divest Ahlborn of all her property interest; instead, Ahlborn retained the right to sue for medical care payments, and the State asserted a right to the fruits of that suit once they materialized. In effect, and as at least some of the statutory language recognizes, Arkansas has imposed a lien on Ahlborn's property. Since none of the federal third-party liability provisions excepts that lien from operation of the anti-lien provision, its imposition violates federal law.

Responding to Plaintiffs' contentions, Defendants maintain that the Maryland statute does not violate the anti-lien provision of the §1396 because the property that the state is seeking is not the property of the recipient, and therefore, Defendants are not seeking to place a lien on Plaintiffs' property in violation of §1396 of the federal Medicaid statute.   Moreover, Defendants emphasize that the state of Maryland does not impose liens on Medicaid recipients' property, as the statute proscribing reimbursement is a notice statute and not a lien statute.   Citing *Ahlborn*, Defendants posit that when a Medicaid recipient has assigned their rights to the state upon enrolling in the Medicaid program, this assignment allows the Department to seek that portion of the Medicaid recipient's settlement award that belongs to the state.  (Doc. No. 24, at 9, citing *Ahlborn*, 547 U.S. at 282, 284). (The Court reasoned that the federal third-party liability provisions "*require* an assignment of no more than the right to recover that portion of a settlement that represents payments for medical care," and that the anti-lien provision "precludes attachment or encumbrance of the remainder of the settlement.") (emphasis in original).

Thus, the assignment creates an exception to the anti-lien provision of §1396a(a)(25), Defendants allege.   Related to this argument, Defendants aver that the recovery scheme that Maryland uses to seek reimbursement for Medicaid expenses, is a scheme where the funds recovered by the Medicaid recipient never belong to the recipient but belong to the Department because of the states "notice and hold" statute.  *Id.* at 16 (stating, "Maryland has enacted a notice and hold provision, not a lien statute").   As such, Defendants assert that they are not seeking settlement proceeds from the Medicaid recipient because these proceeds were never the recipients' property.   Citing language from *Roberts v. Total Health Care, Inc.*, 109 Md. App. 635, 646 (1996), to explain the Maryland hold and notice statute, Defendants state that HG15-

---

547 U.S. at 286.

120 does not interfere with a Medicaid recipient's possessory use and enjoyment of the their settlement awards; the statute "merely serves to put a Program recipient on notice that it owes the Department a sum of money and that the Department has a right to file a claim to collect this money." (Doc. No. 24, at 16-17). Finally, the Defendants direct the Court to the Maryland Court of Appeals' decision in *Roberts v. Total Health Care, Inc.*, for its holding that "the effect of an assignment is to transfer all interests in the property from the assignor to the assignee. . . . Therefore, when Roberts and the children asserted a right to recover for medical expenses, they were asserting a right which belonged to the State to the extent of any payments under the Medicaid program." *Roberts*, 349 Md. at 511-12. As such, Defendants purport that they never placed a lien on Plaintiffs' property, but instead they only put KCS on notice about their rights to the reimbursement award.

Analyzing the statutes and case law presented to the Court, the Court finds that Maryland's statute does not conflict with the federal anti-lien or recovery provisions and that §1396 does not require the state to directly seek reimbursement from third parties by means of intervening in a law suit against the responsible third party. The Court finds the reasoning in *Ahlborn* instructive to determining whether the state of Maryland violated the anti-lien and anti-recovery statutes by seeking reimbursement indirectly from the Medicaid recipient.

In the case at bar, KCS recovered a global settlement which included damages for medical expenses. However, the damages went directly to KCS Special Needs trust, and not to the state. As the total amount of damages (including an unstipulated portion for medical expenses), went to KCS' trust, this was KCS' property, for the proceeds of her settlement had "materialized" in her trust. Therefore, in a technical sense, the state of Maryland is attempting to recoup the Medicaid funds expended from KCS' property. Yet, despite this finding that the

state is attempting to seek these funds directly from KCS' property, the Court finds that this is not prohibited by the anti-recovery or the anti-lien provisions of §1396, to the extent that the Department is *solely* seeking reimbursement from the settlement for the cost of medical care, as *Ahlborn* allows. Maryland's recovery statute uses language similar to that provided in §1396(a)(25)(B), which requires that the state "seek reimbursement or such assistance to the extent of such legal liability" found to exist on the part of the responsible third party.[11] There is no indication from the pleadings that the Department is attempting to recover more than the amount that is statutorily proscribed, i.e. the amount that the Department has expended for medical care. Thus, the anti-lien provision is inapposite to this portion of the settlement, i.e. the portion solely providing reimbursement for medical care. *See Ahlborn*, 547 U.S. at 284-85 ("[T]he exception carved out by §§1396a(a)(25) and 1396k(a) is limited to payments for medical care. Beyond that, the anti-lien provision applies.").

### b. Direct Suits Against the Liable Third Party

Plaintiffs encourage the Court to defer to *Tristani v. Richman*, 609 F. Supp. 2d 423 (W.D. Pa. 2009) for its reasoning that because the state did not intervene in the Medicaid recipient's suits against responsible third parties, the state is precluded from seeking these proceeds directly from the Medicaid recipient.[12] Moreover, Plaintiffs urge the Court to find that Maryland's

---

[11] Maryland's statute, HG-120 (a) states, "If a Program recipient has a cause of action against a person, the Department shall be subrogated to that cause of action to the extent of any payments made by the Department on behalf of the Program recipient that result from the occurrence that gave rise to the cause of action." The Court notes that Maryland's statute only allows Maryland to recover to the extent of payments that the Department had made for the Medicaid recipient. This tracks the federal recovery statute which caps state's recovery to this amount.

[12] Plaintiffs point out the *Tristani* court's interpretation of §1396(a)(25)(i)-(ii). The Court stated explained,
    A close examination of the statutory provisions allegedly creating the "exceptions" asserted by Richman and Houstoun indicates that Congress contemplated the commencement of direct actions by state entities against liable third parties for the cost of medical assistance furnished to Medicaid recipients. Section 1396a(a)(25)(A)(i)-(ii) requires a state plan for medical assistance to take all reasonable measures to provide for "the collection of sufficient information (as specified by the Secretary in regulations) to enable *the State to pursue claims against ... third parties,"* and to further provide for "the submission to the Secretary of a plan (subject to approval by the Secretary) *for pursuing claims against such third parties."* 42 U.S.C. § 1396a(a)(25)(A)(i)-(ii). This statutory language unambiguously refers to direct actions by state entities against liable third parties. Section 1396a(a)(25)(B) requires a state to "seek reimbursement" from

recovery scheme proscribed in §§15-109(d) and 15-120(a) and (c) of the Maryland Code conflict with 42 U.S.C. §1396p(a) and (b) and are unenforceable, using *Tristani* as support for its argument.

The *Tristani* court acknowledged that the Supreme Court in *Department of Health and Human Services v. Ahlborn*, 547 U.S. 268 (2006) interpreted §1396a(a)(25) to create a possible exception for a lien for the payments for medical care. *Id.* at 466 ("Read literally and in isolation, the anti-lien prohibition contained in §1396p(a) would appear to ban even a lien on that portion of the settlement proceeds that represents payments for medical care. *Ahlborn* does not ask us to go so far, though; she assumes that the State's lien is consistent with federal law insofar as it encumbers proceeds designated as payments for medical care."). However, in *Tristani*, the Court engaged in an analysis of anti-lien provisions to determine if an exception existed for the payment of medical expenses, as the *Ahlborn* court had assumed this exception but had not explicitly held that the exception existed. *See id.* at 467. Engaging in a lengthy statutory construction analysis, the *Tristani* court concluded that "Congress expressly enumerated exceptions to the anti-lien and anti-recovery provisions, and none of those exceptions indicate that the substantive prohibitions are inapplicable to third-party payments attributable to medical expenses incurred by the Medicaid program." *Id.* at 470. The Court reached this conclusion by interpreting sections 1396(a) (25) and 1396k(a) "to require an assignment for the purpose of enabling a participating state to directly pursue claims against third parties liable for the costs of providing medical assistance to Medicaid recipients." *Id.* The Court further asserted that "by

---

liable third parties for the cost of medical assistance provided to an individual "in any case where such a legal liability is found to exist after medical assistance has been made available on behalf of the individual *and* where the amount of reimbursement *the State can reasonably expect to recover exceeds the cost of such recovery.*" 42 U.S.C. § 1396a(a)(25)(B) (emphasis added). The plain language of this statutory provision reveals that Congress believed that participating states would not only pursue liable third parties directly, but that they would also incur costs in seeking to recover their expenditures.

609 F. Supp. 2d at 469.

virtue of the assignments, the DPW was able to represent directly its own interests. Having failed to do so, the DPW was not entitled to impose liens on the settlement proceeds obtained by Tristani and Valenta, or to seek adjustments from such proceeds for 'medical assistance correctly paid' on their behalf, under circumstances not within the exceptions to the anti-lien and anti-recovery prohibitions expressly enumerated in §§1396p(a)(1)§§1396p(b)(1)." *Id.*

Regarding the Pennsylvania lien statutes at issue in *Tristani*, the court reached the conclusion that the Plaintiffs urge the Court to reach in the instant case. Using *Tristani*'s holding as support for their argument, Plaintiffs argue that "to the extent that Maryland Statutes, §§15-109 and 15-120 of the Health General Article, Md. Ann. Code, authorize the Department's assertion of a claim <u>against KCS</u> for reimbursement of medical assistance benefits correctly paid on her behalf, the statutes directly conflict with federal law, specifically 42 U.S.C. §1396 (a) and (b), and are preempted and rendered invalid and unenforceable under the Supremacy Clause of the United States Constitution." (Doc. No. 17-1, at 9) (emphasis in original).

The Court finds that the Maryland statute does not conflict with the 42 U.S.C. §1396p(a) and (b). Nothing in the §HG-120 appears to allow the state of Maryland to recover for more than the amount of assistance that the state offered to the Medicaid recipient. While the state is allowed to place a lien on the amount of the settlement that represents damages for medical care, this does not violate the anti-lien provision because this lien is an exception to the anti-lien provision. The source of complication in this case is the fact that KCS received a global settlement, and therefore, no portion of the settlement was specifically designated as compensation for KCS' medical care. However, the Court in *Ahlborn* appeared to contemplate situations such as this one, where the Plaintiffs had not stipulated with the third parties as to what amount of the settlement was compensation for medical care, articulating that when the parties

had not stipulated an amount for medical payments in a global settlement, the parties would be able to submit this matter to the court for a determination of which portion of the settlement represented the amount for medical care.[13] Thus, the fact that the state is seeking reimbursement from a global settlement award does not necessarily result in the conclusion that the Department in this case is violating federal law or that §HG-120 conflicts with federal law. In this particular scenario, because the global settlement fails to stipulate an amount for medical care, the Court has the power to determine the amount that represents damages for past medical care. However, the Court reads the Maryland recovery scheme to be consistent with the federal anti-lien statutes to the extent that Maryland only seeks reimbursement for medical care.

The Court will finally address the last issue presented in Count I—whether the Department essentially waived its rights to reimbursement because it did not intervene in KCS' suit against the responsible third parties. The *Tristani* court found that Pennsylvania would have avoided the strictures of the anti-lien provision had they intervened in the suit against the Plaintiff's tortfeasors. 609 F. Supp. 2d at 473 ("because a *potential* settlement award is not yet the property of the plaintiff, it can be subject to a state-imposed lien, and that a state entity can avoid the strictures of §§1396p(a)(1) and 1396p(b)(1) by intervening in a case and representing its own interests under the assignment.")("The DPW was able to represent its own interests. Having failed to do so, the DPW was not entitled to impose liens on the settlement proceeds obtained by Tristani and Valenta . . . ."). However, this Court does not read §1396a(a)(25)(A)(i)(ii) to expressly require states to intervene in direct suits against Medicaid

---

[13] "ADHS' and the United States' alternative argument that a rule of full reimbursement is needed generally to avoid the risk of settlement manipulation is more colorable, but ultimately also unpersuasive. The issue is not, of course, squarely presented here; ADHS has stipulated that only $35,581.47 of Ahlborn's settlement proceeds properly are designated as payments for medical costs. Even in the absence of such a postsettlement agreement, though, the risk that parties to a tort suit will allocate away the State's interest can be avoided either by obtaining the State's advance agreement to an allocation or, if necessary, by submitting the matter to a court for decision." 547 U.S. 268 at 288.

recipient's tortfeasors (responsible third parties).  Rejecting the contention that the state was required to sue states directly for reimbursement, the Connecticut Supreme Court in *State v. Peters*, 287 Conn. 82, (Conn. 2008) stated,

> The United States Supreme Court has indicated that states may pursue medicaid reimbursement indirectly by asserting a lien on a recipient's recovery from a liable third party. In *Arkansas Dept. of Health & Human Services v. Ahlborn,* a medicaid recipient obtained a tort settlement from a third party and the Arkansas department of health and human services asserted a lien against the settlement proceeds for reimbursement of medicaid funds it had paid to that recipient. The lien was not reduced pro rata to compensate the recipient for attorney's fees and costs. Although whether a state may pursue reimbursement indirectly through a lien and, if so, whether that lien must be reduced pro rata, was not at issue in *Ahlborn,* the court, in holding that a state may assert a lien only on the settlement amount that represents medical expenses; indicated that a state may pursue reimbursement indirectly through a lien.

*Peters*, 287 Conn. at 96 (internal citations omitted).

Although this holding is not binding on this Court, the Court finds the reasoning in *Peters* persuasive.   Moreover, a careful look at the statute indicates that Congress mandates that states take reasonable measures to *enable* them the pursue claims against responsible third parties. While the Court recognizes that Congress intended that states be equipped to directly pursue claims against third parties, Congress did not expressly require states to do so.   The Court believes that if such a requirement existed in the statue, Congress would have expressly stated this in the statute, or the legislative history of the statute would have expressed such an intent. As the statute is silent as to whether states are required to directly intervene in suits against liable third parties, the Court will turn to the Department of Health and Human Service's interpretation of the statute for guidance.[14]   The Department's interpretation states that "[t]o avoid the lien issue, but protect its rights, a State could come to an agreement with a plaintiff on the settlement

---

[14] "First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute."  *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.* 467 U.S. 837, 842-843 (U.S.1984).

of a tort action in order to get an appropriate share.  Alternatively, the State could intervene in the case and represent its own interests directly."   Department of Health and Human Services, Formal Guidance Letter Dated Jun 5, 1996, at 3.   The Court believes that this interpretation is a permissible construction of the statute.   Thus, based on this interpretation, directly intervening in a statute is not required, but it is permitted.  The Court believes that the "notice and hold" provision of the Maryland statute serves as an agreement with the Medicaid recipients, enabling the state to assert its rights to reimbursement of the cost of medical care, without directly intervening in the suit.   The Court finds that the Department does not violate the anti-lien or anti-recovery provisions of §1396 by recovering the amounts for past medical care expenses through their assignment rights and not through direct suits.  For these reasons, COUNT I is **DENIED** as to Plaintiffs and **GRANTED** as to Defendants.

### 3.   COUNT III: Amount of Subrogation that can be Taken from Plaintiff's Settlement Intended for Future Medical Expenses[15]

In Count III, Plaintiffs request that the Court declare that the Department may not satisfy its subrogation claim for past medical experiences from the portion of KCS's settlement intended to compensate KCS for future medical expenses, pursuant to §§15-109(d) and 15-120(a) of the Maryland Health General Article, Maryland Code.  (Doc. No. 17-1, at 22, 24).  As a corollary to this Count, Plaintiffs request that the Court calculate the portion of KCS' recovery that the Department may legally reach.   *Id.*

Plaintiffs argue that the text of §15-109(d) clearly limits the Department's recovery to payments that the Department has made for past medical expenses ("[T]he fact that the statute limits the assigned rights to payment for medical care services to those that have already been

---

[15] The Court addresses Counts III and IV before addressing Count II, as Count II presents the factual question of the proper allocation of KCS' $300,000.000 tort recovery.  Counts III and IV present legal questions which may potentially dispose of Count II, and as such, the Court will address Count III and IV before addressing Count II.

'made by the Department of behalf of the recipient' makes clear that it is only the recipient's claim for past medical expenses paid by the Department that is assigned, and not the recipient's right to sue for and recover the anticipated costs of future medical expenses from a responsible third party.") (Doc. No. 17-1, at 27).

Plaintiffs assert that *Ahlborn*'s holding compels this Court to find that "a state may not recover funds in the hands of a Medicaid recipient when such funds are intended to compensate the recipient for non-assigned aspects of a damages claim. To the extent that a state statute authorizes such conduct, the state statute is inconsistent with the federal anti-lien and anti-recovery provisions of §1396p, and is unenforceable." *Id.* at 17-1, at 37-38. In sum, Plaintiffs declare that the *Ahlborn* court's construction of the anti-lien provision "limits the Department's recoupment efforts to that portion of KCS' settlement proceeds representing a recovery of monies paid out under the Medicaid program for past medical expenses." *Id.*

Plaintiffs further assert that the Maryland recovery statutes are preempted by federal law to the extent that they allow the state to collect from claims that the Medicaid recipient did not assign to the state. As the Court extensively discussed in the proceeding section on Count I, it is established that the Department may only recoup that portion of Plaintiff's settlement proceeds that the state has paid for past medical care. Defendants concede as much. ("Plaintiffs insist that the Maryland statutes only give the Department an interest in 'the recipient's rights to recover against a responsible third party for *past medical expenses already paid by the Department.* Defendants agree.") (Doc. No. 24, at 26) (emphasis in original). Defendants emphasize that they are not seeking to be paid for their future outlays, but they are seeking to be paid for their past outlays from medical care from the full amount of the Plaintiff's settlement, an amount which includes payment for future medical care, according to Plaintiffs. Defendants point out

that the tort recovery that KCS received did not stipulate the amount that was intended for future medical care, and therefore, "the Department's 50 percent allocation rule governs any proffered allocations." (Doc. No. 24, at 27). While the Court recognizes that *Ahlborn* prohibited states from seeking reimbursement from tort settlement awards that were for more than the amount that represented payment for medical care, it is critical to note that in *Ahlborn*, the settlement amount for past medical care was stipulated in the settlement. As noted in the discussion regarding Count I, the *Ahlborn* court explicitly stated that if a scenario were presented where the settlement award contained unstipulated amounts, the amount that should represent past medical expenses that the state could be submitted to the Court for a determination of the amount.[16] As the amount that Plaintiffs received in their settlement was unstipulated as to what amount represented damages for pain and suffering, lost wages, future and past medical care expenses, and the like, the Court must determine which portion of the settlement represents damages for past medical care expenses. This amount is not difficult to determine because the parties have stipulated that the Department spent $298,505.75. The Court does not find that the Maryland statutory scheme conflicts with 42 U.S.C. §1396. As the Court explained in Count I, a state does not violate the anti-lien or anti-recovery provisions of §1396 when it only seeks the amounts paid for past medical care, pursuant to its statutorily proscribed assignment rights. The fact that the settlement in this case contained unstipulated amounts that might represent payments for future medical expenses, and the fact that the Department is seeking to recover from this unstipulated amount does not violate the anti-lien provision, especially when Maryland's recovery statute only allows Maryland to recover the amount that it has spent on past medical care.

---

[16] *See* note 13, infra.

Plaintiffs direct the Court to *Roberts*, 709 A.2d at 148, for its holding that the state is only allowed to recover "to the extent that the settlement proceeds received by [the recipient and her] children represent compensation for medical expenses paid under the medical assistance program they are not [the recipient's] property." As the Court has discussed above, and as Defendants clearly assert, there is no evidence that §15-109 or §15-120 allow the Department to recover for anything more than past medical expenses that the Department has expended on behalf Medicaid recipients. The total damage award which contains a lump sum amount should not preclude the Department from being subrogated for past medical payments that it has made, simply because no amounts were specifically stipulated as representing damages for past medical payments. As no stipulation was made, it was inevitable that the damage award represented payments for both past and future medical costs. The fact that these two compensation categories were placed in the same award, should not result in the Department being prohibited from recouping amounts for past awards. Again, there is no indication from the record that Defendants are attempting to recover anything more than expenses for past medical care. Noting its holding is not binding on this court, the Court finds that observation made in *In re Matey*, 213 P.3d 389, 394 (Idaho 2009) persuasive. ("The [*Ahlborn*] court made no distinction between damages for past medical care and those for future medical care. Nothing in 42 U.S.C. § 1396p indicates that the State may not seek recovery of its payments from a Medicaid recipient's total award of damages for medical care whether for past, present, or future care.") While the Court declares that §15-109(d) and §15-120(a) of the Health General Article only allows for recovery of past medical expenses, the Court does not believe that these statutes prohibit the state from recouping these expenses from settlements that contain unstipulated damage amounts. Therefore, the Court will

**DENY** Plaintiff's Motion for Summary Judgment as to Count III and **GRANT** summary

judgment to Defendants on this Count.

The Court will now address the remaining counts in this Complaint.

### 4.    COUNT IV-Department's Pro Rata Reduction of Settlement Reimbursement

Plaintiffs claim that §15-120 (c) should be interpreted in a manner that requires the

Department to reduce its claim for reimbursement of past medical assistance benefits by the

Department's proportionate share of attorney's fees and litigation expenses.[17]  Plaintiffs direct

the Court to the relevant sections of the 15-120(c)(4)(1) of the Health General Article, Maryland

Annotated Code which states:

> (c)(1) Any Program recipient or attorney, guardian, or personal representative of a Program recipient who receives money in settlement of or under a judgment or award in a cause of action in which the Department has a subrogation claim shall, after receiving written notice of the subrogation claim, hold that money, for the benefit of the Department, to the extent required for the subrogation claim, after deducting applicable attorney fees and litigation costs.
>
> (i)     The Department is not liable for payment of or contribution to any attorney's fees or litigation costs of any Program recipient .
>
> (ii)    The deduction of applicable attorneys fees and litigation costs under [15-120 (c) (1)] may not be considered as payment for or contribution to those fees or costs by the Department.

(Doc. No. 17-1, at 40).

Plaintiffs urge the Court to find that the plain meaning of §15-120(c)  requires that

"applicable attorney's fees and expenses be deducted from the Department's share of the

recovery and that the balance of the funds recovered in connection with the Departments claim

then be held for the benefit of the Department." (Doc. No. 17-1, at 41).

Defendants, on the other hand, profess that the plain language of the statute supports a

contrary interpretation, namely that the Department is not required to pay plaintiffs' fees.  (Doc.

---

[17] Plaintiffs allege, "KCS and the Department agree that the statutory deduction for "applicable attorney fees and litigation costs" must be made ***before*** any obligation to hold funds for the benefit of the Department arises.  In other words, they agree that the recipient's attorney is entitled to receive a full fee out of the gross recovery and before any obligation to satisfy the Department's subrogation interest.  They disagree, however, as to whether the statute requires that the Department's recovery be reduced by its proportionate share of applicable attorney's fees and expenses." (Doc. No. 17-1, at 40).

No. 24, at 27).  Additionally, Defendants believe that the legislative history of the statute clearly demonstrates that the Department is not obligated to pay attorney's fees and litigation costs.  *Id.*

Plaintiffs carefully dissect §15-120(c)(4) when pressing their proposed interpretation of the statute.  Plaintiffs assert that §15-120(c) (4)(i)'s provision which states the department is not *liable* for attorney's fees, must be read in a way that gives meaning to §15-120(c)(4)(ii), so as not make this latter provision superfluous.  Plaintiffs acknowledge that a deduction from the settlement must be made, pursuant to the language in §15-120(c)(4)(ii).  *See* Doc. No. 17-1, at 42).  Moreover, Plaintiffs acknowledge that this deduction may not be *considered* "payment for" or "contribution to" the recipient's attorney's fees, pursuant to the terms of §15-120(c)(4)(2).  Reading §15-120(c)(4)(i) and §15-120 (c)(4) (ii) together, Plaintiffs argue that "if it were intended that no deduction from the Department's recovery would ever occur because the Department is not 'liable' for such fees and expenses, there is simply no reason to provide in §15-120(c) (4)(ii) that the 'deduction' contemplated by §15-120(c)(1) may not be 'considered' as payment for fees and expenses."  (Doc. No. 17-1, at 43).  To support their interpretation of the statute, Plaintiffs cite *Police Comm'r of Baltimore City v. Dowling*, 281 Md. 412, 419 (1977) for the cannon of statutory interpretation which provides that "[a]bsent a clear indication to the contrary, a statute, if reasonably possible, if to be read so that no word, clause, sentence, or phrase, is rendered surplusage, superfluous, or nugatory . . . ."

While the Court respects the cannon of statutory interpretation that Plaintiffs propound, the Court believes that a plain reading of the statute, does not compel the result that the Department is required to reduce its share of the recovery by a proportionate share of the attorney's fees.  It appears to the Court that §15-120(c)(4)(ii) is not mere surplusage—this provision does appear to have a purpose.  The Court's reading of §15-120(c)(4)(ii) leads it to the

conclusion that this provision simply expounds upon the provisions in §15-120(c)(4)(1) and §15-120(c)(4)(i).   Pursuant to §15-120(c)(1), program recipients are required to hold their settlement payments for the Department, "after deducting applicable attorneys fees and litigation costs."   In the proceeding section, §15-120(c)(i), the legislature appears to have intended to stipulate that the "Department is not *liable* for the payment of or contribution to any attorneys fees or litigation costs." (emphasis added). This subsection appears to indicate that the department obtains no legal liability *or* other contractual obligation to contribute to attorney's fees or litigation costs. Finally, subsection §15-120(c)(4)(ii) expressly prohibits the deduction from being considered as the Department's contribution to fees and costs.   Despite the Plaintiffs' contention that this subsection would be rendered superfluous if the statute is not given an interpretation that allows for a pro rata deduction for attorney's fees from the Department's recovery, the Court finds to the contrary.

While §15-120(c)(4)(i) stipulates that the Department is not *liable* for payment or contribution, the Court believes this provision serves as a blanket disclaimer of the Department's liability for attorney's fees.[18]   Using the ordinary meaning of this term, the Court believes that this subsection indicates that the Department is not legally responsible for the payment or contribution of attorney's fees.  Shedding further meaning on the prior provisions in this statute, subsection §15-120 (c)(4)(ii) appears to simply proscribe how the deduction, referenced in §15-120 (c)(4)(1) may be interpreted (i.e.—the deduction cannot be considered as the Department's payment for attorneys fees or litigation costs).   The provision in §15-120 (c)(4)(ii) appears to serve the purpose of alerting the public to the fact that despite the fact that the Department is not legally obligated to pay (as proscribed in §15-120(c)(4)(i), any deduction that the Medicaid

---

[18] The Court uses Black Law Dictionary to ascertain the ordinary meaning of "liable." Black's defines liable as "Responsible or answerable in law; legally obligated." Black's Law Dictionary, (7th Ed.1999).

recipient does make from his settlement cannot be considered as payment for the Medicaid recipient's attorneys fees. Thus, the Court's reading of the statute leads it to the conclusion that each provision has a necessary and independent meaning, and no provision is superfluous. Furthermore, the Court believes that the plain meaning of the statute supports a finding that attorney's fees are not to be deducted from the Department's share of the settlement. First, the statute disclaims all legal liability for attorney's fees and litigation costs. Second and more telling, the statute expressly states that the deduction that the plaintiffs make for the settlement, before the Department receives its share, may *not* be considered payment or contribution from the Department. As no provision of this statute allows for the Department to pay attorney's fees, it is apparent that the legislature did not intend that attorney's fees be deducted from the Department's share of the settlement.

To the extent that any ambiguity remains surrounding these provisions, the Court finds that the legislative history of the statute clears up the ambiguities. In their cross-motion for summary judgment, Defendants highlights §15-120(c)'s legislative history which addresses the question of whether the Department is obligated to pay attorney's fees for settlements that Medicaid recipients have recovered. Particularly persuasive to this Court is the Fiscal Note on HB 926 (now codified at §15-120 (c)(4)) which the Department of Fiscal Services prepared.

> According to DHMH, this bill will prevent a loss of approximately 1/3rd of all liability collections that could go to pay attorney fees. Based on a number of court decisions in other states, DHMH is fearful that its Program collection authority may be required to participate in the payment of attorney fees … Under this bill, the Maryland courts would be prohibited from ruling that the DHMH Program must participate in the payment of attorney fees.

Fiscal Note for HB 926 (1982).

The Department of Fiscal Services' explicit rejection of the idea that the Department of Health and Mental Hygiene would be required to pay attorney's fees further supports this Court's

finding that the statute does not provide for pro rata reduction for attorneys fees in their recoveries.

Plaintiffs argue that if the Maryland statute does not require the Department to reduce its recovery by a proportionate share of the attorney's fees and costs, then the statute will conflict with the federal anti-lien statute and is thus, preempted by federal law. Plaintiffs maintain that *Ahlborn* mandates that "states may not recover funds in the hands of a Medicaid recipient when such funds are intended to compensate the recipient for non-assigned aspects of the recipient's damage claim." (Doc. No. 17-1, at 44). According to Plaintiffs, Defendants support a reading of the statute in which "the recipient is ***required*** to 'pay' the attorney's fees and expenses on that portion of the recovery achieved for the benefit of the Department." (Doc. No. 17-1, at 44) (emphasis in original).

Defendants respond to this contention by directing the Court to *Peters*, where the Supreme Court of Connecticut directly addressed the matter at bar. In *Peters,* the Court held, "the federal statutes that govern the medicaid program do not require the state to pursue third party tortfeasors directly for the reimbursement of medicaid funds, or, alternatively, if the state chooses to collect reimbursement indirectly from the medicaid recipient, to reduce the amount of the reimbursement pro rata to compensate the recipient for attorney's fees and costs that he incurred in pursuing the third party." 946 A.2d at 1242. In response, Plaintiffs assert that they do not advocate a position contrary to the *Peters* holding, as *Peters* did not decide or consider the issues that Plaintiffs present. (Doc. No. 25-1, at 45). Plaintiffs further argue that they are not focusing on federal law, as *Peters* does, but instead, they focus on Maryland law. Plaintiffs claim that Defendants' construction of Maryland law results in an *Ahlborn* violation. If the Defendants are not required to deduct a proportionate share of the attorney's fees and litigation

costs from their recovery, Plaintiffs state that "Maryland law necessarily requires the recipient to pay the attorney's fees and expenses on that portion of the recipient's recovery intended only for the benefit of the Department, and correspondingly depletes the funds intended to compensate the recipient for all other damage claims, all in violation of *Ahlborn*." (Doc. No. 25-1, at 45). The Court does not believe that the Maryland statute violates *Ahlborn* by allowing the Defendants to recover on non-assigned claims, in violation of the anti-lien provisions of §1396. By recovering only that portion of the settlement that is intended to compensate for medical care, Defendants are not in violation of *Ahlborn* or the federal anti-lien provisions. Moreover, the Plaintiffs' argument that the Defendants' interpretation of the Maryland statute results in the recipient paying attorney's fees "on that portion of the recipient's recovery *intended only for the benefit of the Department*" mischaracterizes the attorney's fee deduction that is made (emphasis added). Regardless of whether a plaintiff in a tort action received state medical assistance, barring other fee arrangements, a plaintiff in a tort action would be required to pay his attorney the appropriate attorney's fees.

In the case at bar, Plaintiff recovered damages for more than simply the costs of medical care. Therefore, the Court does not agree with Plaintiffs' assertion that the Defendants' interpretation of the statute would result in the Plaintiffs paying attorney's fees on a recovery that only benefited the Department. The fact that Defendants are not required to contribute to the costs of attorney's fees and litigation costs does not lead to a result that Defendants are seeking more than the amount of past payments that they have made for medical care. The total settlement amount that KCS received inevitably includes a portion of the settlement award that is intended to compensate the Department for past medical care. Plaintiffs' attorney's fees, which Plaintiff would have been required to pay regardless of their enrollment in the state medical

assistance program, cover the costs of obtaining a settlement that includes amounts for both medical care *and* other damage amounts, which the Department is not permitted to recover. Thus, pursuant to Maryland's statute, when Plaintiffs are required to deduct their attorney's fees from the total award amount, and then compensate the Department for the cost of medical care, Defendants are not obtaining any more from the recipient's total award than what *Ahlborn* allows. Failing to contribute to attorney's fees, an amount which the Plaintiff would be required to pay in any event, does not mean that Defendants take from the total award amount, in violation of *Ahlborn*.

As did the *Peters* court, this Court finds it particularly instructive that the Medicare statute does enact a pro rata reduction policy for Medicare reimbursements. 946 A.2d at 1241. ("Indeed, we find it telling that the federal government has chosen to enact a pro rata reduction policy for medi *care* reimbursements, but has not done the same for medi *caid*. See 42 C.F.R. § 411.37(a)(1) (2006) ('[m]edicare reduces its recovery to take account of the cost of procuring the judgment or settlement ... if-[i] [p]rocurement costs are incurred because the claim is disputed; and [ii] [t]hose costs are borne by the party against which [centers for medicare and medicaid services] seeks to recover.'")). The enactment for a pro rata reduction for litigation costs in Medicare cares demonstrates that had Congress intended to enact the same provision in the Medicaid statute, it would have expressly done so, as it did in the Medicare statute. As Congress has not yet spoken to this issue, the Court will not infer that Congress intended to require that the federal Medicaid statutes require the state's recovery to be prorated for attorney's fees. To the Court, it appears as though the federal statute Medicaid statute does not conflict with the Maryland statute on its face. Plaintiffs' pre-emption argument is dependent on the facts of this case, where the total damage award contains unstipulated amounts. However, even on the facts

of this case, the Court does not find that the Maryland statute is pre-empted by federal law, as the Maryland statute limits recovery to the amount that the Department expended for medical care.

Therefore, as the Maryland statute 1) requires that attorney's fees are deducted from the settlement award before the state is reimbursed and 2) that the recipient holds the portion of the award which compensates the state for medical care, the Court finds that Maryland's statute does not result in an *Ahlborn* violation. As such, COUNT IV is **DENIED** as to Plaintiffs and **GRANTED** as to Defendants.[19]

### 5. 42 U.S.C.§1983 Violations

Plaintiffs allege that Defendants' claim to its settlement is a violation of its rights under 42 U.S.C.§1983. As the Court has found that the Defendants have not violated any federally protected right, the Court will **GRANT** summary judgment to Defendants on all counts alleging violations of §1983.

### 6. Defendant's Motion to Dismiss Trust as a Party to this Action

Defendants move to dismiss the Trust as a party in this action, as they insists that under Maryland law, a trust is not recognized as a separate legal entity with the capacity to sue. (Doc. No. 24, at 34). Plaintiffs consent to this Motion, and therefore, the Court will **TERMINATE** the Special Needs Trust as a party to this action.

### CONCLUSION

In summary, the Court finds that the Department does not violate the anti-lien or anti-recovery provisions of §1396 by recovering the amounts for past medical care expenses from

---

[19] The Court finds no need to reach Count II of Plaintiff's Complaint, as the Court's resolution of the legal issues in Counts III and IV disposed of the issues to be addressed in Count II. Plaintiffs have conceded that "Whether the Court need reach the factual issues presented by Count II, or the mixed questions of law and fact presented by Counts III and IV, however, depends on the court's resolution of the purely legal issues presented by Counts III and IV. As to Counts III and IV, Plaintiffs concede that if the Department's position is correct as to the pure legal issues, i.e. if the Department may legally satisfy its claim out of that portion of KCS' recovery intended to compensate for future medical expenses, and if the Department is not legally required to reduce its proportionate share of the procurement costs, then the Department is entitled to reimbursement for the full amount of its claimed subrogation interest ($298, 585.75), and this is so regardless of how the $300,000,000 recovery is allocated amongst KCS' various damage claims pursuant to Count II." (Doc. No. 17-1, at 23).

recipients' settlements through their assignment rights and not through direct suits.  Moreover, the Department is not prohibited from seeking reimbursement for past medical care expenses from the Plaintiffs' settlement award, even if this award includes compensation for future medical care expenses.   Finally, the Court finds that the Department is not required to reduce its recovery from the Plaintiffs by a proportionate amount for attorney's fees and litigation costs. For the reasons articulated in this Opinion, summary judgment is **DENIED** as to Plaintiffs and **GRANTED** as to Defendants on all Counts.    Additionally, Special Needs Trust for KCS is **TERMINATED** as a party to this action.   An order consistent with the Memorandum Opinion will follow.

Date:   <u>March 28, 2011</u>                                    _____/s/_____
                                                                Alexander Williams, Jr.
                                                                United States District Judge